FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
'00 NOV 27 PM 3: 24
SIGN_____
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KIKI IKOSSI-ANASTASIOU, Ph.D.,<br>5712 Evergreen Knoll Ct.<br>Alexandria, VA 22303,<br>                Plaintiff,<br><br>v.<br><br>Board of Supervisors of Louisiana State<br>University and Agricultural and Mechanical College<br>a.k.a. LOUISIANA STATE UNIVERSITY,<br>Baton Rouge Campus,<br><br>serve: Dr. Daniel Fogel, Executive Vice Chancellor<br>       and Provost<br>       Louisiana State University<br>       146 Thomas Boyd Hall<br>       Baton Rouge, LA 70803<br>                Defendant. | CASE NO. 00-883-C-3<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT OF DISCRIMINATION IN EMPLOYMENT

Plaintiff Kiki Ikossi-Anastasiou, Ph.D., hereby files this Complaint seeking equitable relief and money damages arising out of discrimination based on sex in the following employment actions: constructive discharge, failure to promote, and the unequal provision of pay, benefits and other terms and conditions of employment, by her employer, Defendant Louisiana State University ("LSU"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, Sec. 901 *et seq.*, as amended, 20 U.S.C. Sec. 1681 *et seq.*, ("Title IX"), the Equal Pay Act, 29 U.S.C. § 206(d), *et seq.* ("Equal Pay Act"), and the Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301 *et seq.*

## NATURE OF ACTION, JURISDICTION AND VENUE

1. This is a civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, Sec. 901 *et seq.*, as amended, 20 U.S.C. Sec. 1681 *et seq.* ("Title IX"), the Equal Pay Act, 29 U.S.C. § 206(d), *et seq.* ("Equal Pay Act"), and the Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301 *et seq.*

2. Jurisdiction over this action is properly invoked pursuant to 28 U.S.C. §§1331 and 1343 as well as 42 U.S.C. §2000e-5(f)(3), and 20 U.S.C. § 1683. The Court has supplemental jurisdiction over the Plaintiff's state claim.

3. Venue of this action lies in this Court under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391, as the claims presented arose, and the unlawful employment practices complained of occurred, within this judicial district.

## PARTIES

4. Plaintiff KIKI IKOSSI-ANASTASIOU, Ph.D., a resident of the full age of majority of the County of Fairfax, State of Virginia (hereinafter "Dr. Ikossi-Anastasiou"), was employed at all relevant times as a professor by the Department of Electrical and Computer Engineering, a part of the College of Engineering at Department of Louisiana State University.

5. Defendant Board of Supervisors of LOUISIANA STATE UNIVERSITY and Agricultural and Mechanical College (hereinafter "Louisiana State"or "LSU") is an institution of higher education located in Baton Rouge Parish, Louisiana, that receives federal financial assistance. Defendant employs over five hundred and one (501) individuals, and is an

"employer" under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, the Equal Pay Act, and the Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301 *et seq.*

## JURY DEMAND

6. Plaintiff demands trial by jury for her claims under Title VII, 42 U.S.C. § 2000e *et seq.*, Title XI, and the Fair Labor Standards Act's Equal Pay Act provision, 29 U.S.C. Sec. 201 *et seq.*, La. R.S. 23:301 *et seq.*, and Rule 38(b) of the Federal Rules of Civil Procedure.

## FACTS

7. Plaintiff is the first tenured female faculty member in Louisiana State's Department of Electrical and Computer Engineering ("the Department") and was the only tenured female faculty member in the entire College of Engineering at the time. She was granted tenure in 1996, after first being denied tenure for three consecutive years by the Department and the College.

8. Plaintiff earned her Ph.D. in Electrical and Computer Engineering from the University of Cincinnati in 1986. Plaintiff's area of expertise is solid state electronics and micro-mechanical structures. She has taught at Louisiana State University as a faculty member in its Electrical and Computer Engineering Department since November 1990.

9. Plaintiff left a position as a senior research scientist for Universal Energy Systems in Dayton, Ohio to accept the position at Louisiana State University.

10. Plaintiff is a highly qualified and respected professor. She is the first and only woman to have ever been awarded tenure in the Department of Electrical and Computer Engineering. She has taught many different courses at LSU multiple times, has been awarded prestigious appointments as Navy-American Society for Engineering Education Summer

3

Research Fellow for eight consecutive years, and has received numerous awards and certificates for her research in heterostructures and optical modulation quantum devices.

11. She has a nationally recognized and well-funded research program which has successfully obtained over $1,045,000 in research grants for the LSU Department.

12. Since Plaintiff has been teaching at LSU, she has been subjected to disparate treatment and harassment, amounting to a hostile environment, by the all-male administrators and male faculty members.

13. For example, she was invited by the National Science Foundation to participate in a special seminar, then was criticized for teaching this advanced material "without permission" by her (male) Area Coordinator Pratul Ajmera. She was also called "insubordinate" by Department Chairman Alan Marshak, a white male, for teaching this material.

14. At the time she was hired, Plaintiff was promised that LSU would promptly install a specialized semiconductor "clean room" which she needed to continue her state-of-the art research. However, the room was not installed until 1994, and even then she was denied access to it, making it difficult or impossible for her to continue her research. Male faculty members were routinely permitted access to the room.

15. Dr. Ikossi-Anastasiou was never provided with her own research space, unlike the male faculty members. Instead, she was forced to share lab space with the Area Coordinator. She has also been denied space to install advanced scientific equipment which she won through competitive grants, and has been forced to install her equipment at borrowed locations. Her success in doing so led to intensified harassment from Area Coordinator Ajmera and Chairman Marshak.

4

16. Despite these stellar qualifications, she has been denied promotions and pay raises which were routinely awarded to male faculty members.

17. The ECE Department faculty, Chairman Marshak, and College of Engineering Dean Edward McLaughlin denied Plaintiff's tenure application in 1996 on grounds that she lacked "collegiality." They were overruled by the LSU higher administration. Following her successful award of tenure, the harassment and discrimination intensified.

18. In 1996, while all other male professors in the Department were awarded an average 15% raise, Dr. Ikossi-Anastasiou was only awarded a 5% raise. When she asked about the raise during a faculty meeting, the chairman ridiculed her. Since 1996, she has never received another raise, unlike most male faculty members.

19. She has also been denied the opportunity to supervise and advise graduate students in their research, including work towards Ph.D.s and on grants she was supervising. In 1996-97, her research assistant was arbitrarily dismissed without consulting her, while other students were encouraged both subtly and openly to avoid working with her. One of these was her first Ph.D. student, who was ultimately taken away from her supervision and granted a Ph.D. for work which Dr. Ikossi-Anastasiou had supervised and funded, yet without her approval, raising serious intellectual property concerns. In yet another case, a Department secretary called the police to keep her from reviewing a certain student's file, although she was entitled to review the file.

20. Male supervisors in the Department, including the Chairman, repeatedly refused to approve Dr. Ikossi-Anastasiou's research grant proposals, making it difficult for her top apply for and compete for research funding. She was only able to obtain approvals by bypassing the

5

Department and appealing directly to higher level administrators. Grant applications submitted by male faculty members, by contrast, were routinely approved, regardless of scientific merit.

21. In 1997-98, due to the ongoing harassment she was experiencing, she requested and was granted a one-year sabbatical leave of absence from LSU, during which she continued to draw half her regular salary and benefits.

22. While on sabbatical leave, she continued her ongoing research at the Naval Research Lab. She requested that certain scientific equipment which she had obtained under research grants be transferred to the Navy so she could continue her research, but was effectively denied by making the transfer impossible to arrange. Male professors have been permitted to temporarily transfer research equipment.

23. In 1995 and in April of 1998, Dr. Ikossi-Anastasiou filed grievances against Marshak, Ajmera, and three other current and former faculty members, alleging discrimination, a hostile environment, and denial of promotions and salary increases. Upon information and belief, none of these grievances have been resolved to date.

24. While still on sabbatical, in August 1998, Dr. Ikossi-Anastasiou's six-year old son became extremely ill. She requested an additional year of unpaid medical leave in order to care for her son. The university granted the leave but only for twelve weeks, and insisted that she return and resume teaching in January 1999.

25. In January 1999, since her son had not yet recovered, she again requested an extension of her unpaid medical leave. The university denied her leave request. Instead, it demanded that she resign from her position and informed her that if she refuses to resign she would be deemed to have abandoned her tenured position.

6

Case 3:00-cv-00883-RET-DLD    Document 1    11/27/2000    Page 6 of 13

26. In February of 1999, plaintiff spoke with Dr. Daniel Fogel, Executive Vice Chancellor and Provost. Dr. Fogel informed her that her position had been terminated due to abandonment and was now "gone." He again asked her to resign and to release the university from all legal claims.

27. To add insult to injury, he also demanded that she repay the salary and benefits awarded to her during her duly approved sabbatical leave from the university in 1997-98.

28. By contrast, male faculty members with similar medical/family issues have been afforded extended leaves of absence and permitted to retain their tenured positions and return to the university with no loss of pay or faculty status. No full-time male faculty in Louisiana State's Department of Electrical and Computer Engineering has been denied leave, at least during plaintiff's employment. In fact, Dr. Ikossi-Anastasiou was often forced to fill in for male faculty members on leave.

29. LSU's actions of denying Dr. Ikossi-Anastasiou's medical leave and deeming her to have "abandoned" her post amount to a constructive discharge for reasons of sex in violation of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

30. In October 1999, plaintiff contacted the New Orleans, Louisiana Office of the Equal Employment Opportunity Commission ("EEOC") and sent the Commission a Charge Intake Questionnaire outlining her complaints.

31. In December 1999, plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission and the Louisiana Commission on Human Rights, which was assigned EEOC Case No. 270-AO-0239.

32. On or about August 30, 2000, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

33. Dr. Ikossi-Anastasiou has thus exhausted all appropriate administrative remedies prior to the filing of this Complaint pursuant to 42 U.S.C. §2000e.

### COUNT I - DISCRIMINATION and
### CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII AND TITLE IX

34. Plaintiff hereby incorporates by reference paragraphs 1-33 above.

35. Defendant's treatment of plaintiff has constituted both disparate treatment and harassment, amounting to the creation and maintenance of a hostile environment.

36. She has repeatedly been denied promotions, pay raises and leaves of absence which were routinely awarded to male faculty members, and has been repeatedly asked to repay salary and benefits already awarded to her.

37. She has been abused, criticized, deprived of access to research facilities and space to install equipment, forced to share lab space, denied approval for grant proposals, denied the opportunity to advise graduate students, denied access to student files and research papers, and refused access to necessary scientific equipment, all of which are routinely provided to male professors. These conditions were sufficiently severe and pervasive to alter the terms and conditions of her employment.

38. Finally, she has been constructively discharged by the university's refusal to extend her medical leave, its terminating her position due to "abandonment," and its demand that she resign her tenured position, unlike male faculty members who have been granted extended leaves of absence.

8

39. LSU's actions constitute continuing unlawful disparate treatment and continuing intentional discrimination on the basis of sex in violation of Title VII and Title IX.

40. Defendant knowingly and intentionally pays plaintiff less than it pays all male full-time tenured faculty members in her department with similar duties, experience and research expertise.

41. Defendant's officials had actual knowledge of the facts pleaded above and deliberately failed to respond to or remedy this discrimination.

42. Defendant's actions constitute sex-based employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and in violation of Title IX of the Education Amendments of 1972, Sec. 901 *et seq.*, as amended, 20 U.S.C. Sec. 1681 *et seq.*

43. Defendant's discriminatory treatment of plaintiff was and is willful and intentional.

44. As a result of this discriminatory treatment, plaintiff has suffered financial loss, damage to her reputation and career, loss of pride and self-respect, loss of enjoyment in life and career, and loss of community and social standing. Defendant's conduct has negatively affected plaintiff's future job prospects, salary and compensation.

## COUNT II
## VIOLATIONS OF THE EQUAL PAY ACT

45. Paragraph Nos. 1 through 44 are hereby incorporated by reference.

46. Plaintiff is the first and only full-time tenured female faculty member serving in Louisiana State's Department of Electrical and Computer Engineering.

47. Plaintiff is the lowest paid associate professor in the solid state electronic group of the Department of Electrical and Computer Engineering, considering her experience and research expertise.

48. Plaintiff and her full-time colleagues in the Electrical and Computer Engineering Department perform jobs that are substantially equal in terms of requisite skill, effort and responsibility, and which are performed under similar working conditions.

49. The skill levels are the same in that all full-time faculty members must be able to teach the students in their classes and perform original research. They also are expected to publish their work and attract grant funding, as well as mentor students, participate in various committees on campus and/or otherwise contribute to the life of the campus community. They are all faculty members in the Electrical and Computer Engineering Department, and therefore all require high level technical, scientific and research skills.

50. Plaintiff's position involves equal -- if not more -- effort and responsibility than some of her male colleagues. Plaintiff has taught more different courses than any other full-time faculty member in the Department, thus requiring additional time for preparation, along with a very active research schedule.

51. Plaintiff's teaching ability is highly regarded by faculty and students, further evidencing the effort she puts into her class preparation. Additionally, she has expended significant efforts in securing grants, researching, and publishing.

52. Plaintiff's job is performed under similar working conditions to her peers. They all teach classes of university students, grade papers and exams, keep office hours for their students, and perform research either in the office and/or a lab.
10

53. Defendant's action in paying plaintiff less than similarly-situated male faculty members constitutes sex-based wage discrimination in violation of the Equal Pay Act.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII AND TITLE IX

54. Paragraph Nos. 1 through 53 are hereby incorporated by reference.

55. Plaintiff brought her concerns of sex discrimination to the attention of Louisiana State University by filing five grievances against male faculty members in April of 1996.

56. Plaintiff's complaints were protected activity under Title VII and Title IX.

57. Following her protected activity, defendant refused to extend plaintiff's medical leave and constructive ly discharged her.

58. Defendant's failure to approve the requested leave and termination of plaintiff's employment was unlawful retaliation on account of her protected activity in violation of Title VII and Title IX.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that this honorable Court grant her the following relief:

1. A Declaration that Defendant has violated Title VII and Title IX.

2. A Declaration that Defendant has violated the Equal Pay Act.

3. A Declaration that Defendant has violated the Louisiana Employment Discrimination Law.

4. An Order requiring immediate reinstatement of Dr. Ikossi-Anastasiou to her tenured Associate Professor position within LSU's Department of Electrical and Computer Engineering.

5. An Order directing the Defendant and, in particular, the Department and its administrators, from engaging in discriminatory and retaliatory practices in any employment decision which will affect any terms and conditions of Plaintiff's employment with the Department, including pay, approval of leave, and all other terms and conditions of her employment.

6. An Order directing Department administrators and staff to remove all references to "abandonment" from Dr. Ikossi-Anastasiou's personnel file.

7. An award of lost back pay and benefits, plus interest, for three years prior to the administrative proceedings leading to filing of this suit, as permitted by the Equal Pay Act, consisting of the difference between the salary and benefits received by plaintiff and the average value of the salary and benefits received by male tenured faculty in the Department, or in the alternative, the value of the salary and benefits received by the male faculty member whose qualifications and position most closely mirrors plaintiff's as determined in discovery.

8. An award of liquidated damages as provided under the Equal Pay Act.

9. An award of additional back pay, front pay and benefits as permitted by Title VII and Title IX, with interest.

10. Compensatory damages in an amount to be determined at trial.

11. Punitive damages in an amount to be determined at trial.

12. Reasonable attorney's fees and costs.

13. Such other relief as this Court deems just.

Respectfully submitted,

*[signature]*

Dated: November 17, 2000

13